CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 10 2008
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| OLIVIA MAYBERRY, for D.H. <br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, <br> Defendant. | Civil Action No. 6:07cv19 <br><br> By: Hon. Michael F. Urbanski <br> United States Magistrate Judge |

### REPORT AND RECOMMENDATION

Plaintiff Olivia Mayberry ("Mayberry"), the grandmother of the minor child, D.H., brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for a review of the final decision of the Commissioner of Social Security denying the claim for child's supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"). The case is before the court on cross motions for summary judgment and by Order dated July 16, 2007, was referred to the undersigned for Report and Recommendation.

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, a reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the

Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

## I.

Mayberry claims disability for her grandchild, D.H., due to behavioral issues. Mayberry disputes the administrative law judge's ("ALJ") finding that D.H.'s impairments do not meet nor functionally equal a listed impairment. Mayberry argues that D.H.'s impairments functionally equal the listings because he has marked limitations in domain (i) acquiring and using information, domain (ii) attending and completing tasks, and domain (iii) interacting and relating well with others. 20 C.F.R. § 416.926(b)(1). In the alternative, Mayberry argues that the ALJ committed an error of law by not considering whether D.H. was disabled for a discrete or closed period of time within the broader period of time encompassed by the SSI application.

This matter must be remanded for further administrative proceedings for two reasons. First, the ALJ failed to specifically address why he chose not to rely on D.H.'s scores on standardized testing with regard to domain (i), thereby foreclosing meaningful review by this court. Second, the ALJ failed to determine whether D.H.'s academic and behavioral progress was the result of being placed in a highly structured environment and whether he would be able to maintain such a level of functioning absent the structured environment. The Commissioner argues that the decision is supported by substantial evidence, because the ALJ relied upon the opinion of Dr. Wayne E. Sloop, D.H's testimony, Mayberry's testimony, and school records to determine that he has less than a marked limitation in domains (i) and (ii) and no limitation in domain (iii). While this may be true, it does not resolve the ALJ's failure to consider the two issues outlined above. As a result, the undersigned recommends denying defendant's motion for summary judgment and remanding this matter for additional administrative consideration.

2

## II.

A child under the age of eighteen is considered to be "disabled" for purposes of eligibility for a child's SSI if he has a medically determinable physical or mental impairment which results in marked and severe functional limitation, and which has lasted or can be expected to last for a continuous period of at least twelve (12) months, or results in death. 42 U.S.C. § 1382c(a)(3)(C)(I). In determining whether a child is eligible for child's SSI on the basis of disability, a three-step sequential evaluation process is followed. 20 C.F.R. § 416.924.

First, it must be determined whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If not, it must then be determined whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). If the child suffers from a severe impairment or combination of impairments, it must then be determined whether the child's impairment meets, medically equals, or functionally equals an impairment listed in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.924(d).

Functional equivalence is defined as an impairment of listing-level severity; for example, it must result in "marked" limitations in two domains of functioning, or result in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). There are six domains of functioning assessed in determining functional equivalence: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) ability to care for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A marked limitation is defined by the regulations at 20 C.F.R. § 416.926a(e)(2):

> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your

3

impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. The overall assessment of the claimant's ability to appropriately, effectively, and independently perform activities must be compared to the performance of other children of similar age who do not have impairments.

20 C.F.R. § 416.926a(e)(2)(i).

The regulations define an extreme limitation as follows:

(i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity1 or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

The ALJ found that D.H. has not engaged in substantial gainful activity and that his speech and learning difficulty caused him more than minimal limitations on his functioning, resulting in a severe impairment. Administrative Record (hereinafter "R") at 18. However, the ALJ found that his impairments did not meet or medically equal a listed impairment.[1] (R. 18-19)

---

[1] Mayberry stipulates that the ALJ's decisions as to substantial gainful activity and the severity of D.H.'s impairments or combination thereof are supported by substantial evidence.

4

The ALJ next considered if D.H.'s impairments were functionally equivalent to a listing, considering the six domains of functioning. Based on the record, the ALJ found that while D.H. had limitations in his ability to acquire and use information and his ability to attend and complete tasks, his limitations were not marked. (R. 21) Nor were there any marked limitations in any other domain.[2] (R. 20-21) As such, the ALJ concluded that D.H.'s impairments were not functionally equivalent to a listing.

### III.

Mayberry first argues that the ALJ erred in not finding that D.H. functionally equaled a listing because of marked limitations in domains (i) acquiring and using information, (ii) attending and completing tasks, and (iii) interacting and relating well to others. If D.H. demonstrates an extreme limitation in any of these domains or marked limitations in two domains, then benefits should be awarded. Mayberry's argument that the ALJ's decision is deficient as to domain (i) is compelling.

Domain (i) requires consideration of how well the claimant acquires or learns information and how well the claimant can use information learned. 20 C.F.R. § 416.926a(g). For children ages 6-12, this translates into the ability to "learn to read, write, and do math, and discuss history and science. . . . You should be able to use increasing complex language (vocabulary and

---

Accordingly, this court's inquiry is limited to the ALJ's determinations at step three of the sequential evaluation process for children.

[2] Mayberry stipulates that the ALJ's decision that D.H. does not have a marked limitation was proper in the following domains: moving about and manipulating objects; caring for one's self; and health and physical well-being. Therefore, this court's inquiry is limited to whether substantial evidence supports the ALJ's decision that D.H. does not have a marked limitation in two or an extreme limitation in one of the three remaining domains.

5

grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinion of others." 20 C.F.R. § 416.926a(g)(2)(iv). For adolescents ages 12 to 18, this translates into the ability to "to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). . . .You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas)." C.F.R. § 416.926a(g)(2)(v).

With regard to domain (i), the ALJ's opinion can be described as nothing short of sparse. As to this domain, the entirety of the ALJ's reasoning is as follows:

> The claimant has less than marked limitation in acquiring and using information. He takes tests and asks questions. His grades are much better in his new school.

(R. 20) This succinct summary is deficient on its face, especially considering D.H.'s performance on the Wechsler Individual Achievement Test - Second Edition ("WIAT-II") administered on February 6, 2004. (R. 121-26)

D.H.'s performance on the WIAT-II suggests that D.H. may very well have a marked limitation or even extreme limitation as to this domain. The WIAT-II tests four general subject areas: reading, mathematics, written language, and oral language. Each subject area is then broken down further into individual subjects as follows: reading is composed of word reading, reading comprehension, and pseudoword decoding; mathematics is composed of numerical operations and math reasoning; written language is composed of spelling and written expression; and oral language is composed of listening comprehension and oral expression. Once scores are

obtained for the individual sub-categories, a composite score is generated for the general category.

D.H.'s scores on the test are telling. D.H. was only tested in eight of the nine categories, as the test did not return a valid score for the oral expression portion of oral language. (R. 125) Remarkably, D.H.'s test scores placed him at two standard deviations or below in six of the eight categories. (R. 125) Only in spelling and pseudoword decoding, were D.H.'s test scores within one standard deviation of the mean. (R. 125) D.H.'s composite scores in mathematics and written language were three standard deviations below the mean and his composite score in reading was two standard deviations below the mean. (R. 125)

The ALJ is charged with considering a claimant's test scores, but need not rely on test scores alone in making a disability determination. 20 C.F.R. § 416.926a(e)(4)(i). As noted above, an extreme limitation "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean," and a marked limitation "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(1-3). The regulations provide that an ALJ "may find that you do not have a marked or extreme limitation, even if your test scores are at the level provided . . . if other information in your case record shows that your functioning in day-to-day activities is not seriously or very seriously limited by your impairment(s)." 20 C.F.R. § 416.926a(e)(4)(ii)(B). When an inconsistency exists between the test scores and the claimant's everyday functioning, the ALJ must attempt to resolve such a discrepancy. 20 C.F.R. § 416.926a(e)(4)(iii). Most

Case 6:07-cv-00019-NKM-mfu   Document 20   Filed 06/10/08   Page 7 of 12   Pageid#: 89

significantly, when an ALJ decides not to rely on test scores, he must explain the reasons for doing so on the record. 20 C.F.R. § 416.926a(e)(4)(iii)(B).

As noted above, in domain (i), the child's ability to "learn to read, write, and do math" are at issue. 20 C.F.R. § 416.926a(g)(2)(iv). D.H.'s test scores in both mathematics and written language place him three standard deviations below the mean, sufficient for a finding of an extreme limitation in this domain under 20 C.F.R. § 416.926a(e)(4). While the ALJ need not rely on these test scores under 20 C.F.R. § 416.926a(e)(4)(ii)(B), if he decides not to rely on these scores, he must at least explain his decision not to rely on them. Here, the ALJ never even mentions D.H.'s test scores, let alone sufficiently explains why he chose not to rely on them. D.H.'s day-to-day activities may very well provide the ALJ with sufficient evidence to overcome the test scores, but such a determination and the reasons for it must be specifically addressed in the opinion.

Because the ALJ's terse opinion lacks the specificity required under the applicable regulations and case law, meaningful review by this court is precluded. See <u>Slusser v. Apfel</u>, 85 F. Supp.2d 634, 637-38 (W.D.Va. 2000) (holding that substantial evidence does not support the Commissioner's decision when the ALJ fails to explicitly address the significance of standardized testing results). Accordingly, the undersigned is constrained to recommend remand for appropriate consideration and specific discussion of D.H.'s standardized test scores.

## IV.

The ALJ's error in not specifically delineating why he chose not to rely on D.H.'s WAIT-II scores, is further compounded by his reliance on D.H.'s improvement in school. In the section of the opinion relating to domain (i), the ALJ notes that D.H.'s "grades are much better in his

8

new school." (R. 20) With regard to domain (ii), attending and completing tasks, the ALJ notes that D.H.'s "grades are much improved; he is not missing time from school; he goes every day, asks questions, takes tests and does his homework. . . . He works along with 3 other students, with his teacher." (R. 21) Earlier in the opinion the ALJ writes:

> [I]n his new school, he receives individual attention from his teacher, and things are better - his grades are much better, he is not missing time from school, he goes every day, and does his homework at school. He no longer has the behavior problem he had at his other school. . . . The claimant testified that he works along with 3 other students, with his teacher. He takes tests and asks questions, and likes this better that his old school situation and is doing better, including his behavior.

(R. 19)

D.H. was attending Sandusky Middle School and failing all of his classes, (R. 131), when he took the WIAT-II test in February, 2004. Based on his performance on the WIAT-II test and his failing grades in all his classes, D.H. became eligible for special education classes, (R. 95, 117), which he enrolled in for the 2004-2005 school year. At the end of the 2004-05 school year, D.H. failed Science and Math and earned a D in Social Studies and a C in English. Ostensibly, this demonstrates improvement over the prior year when he failed all classes.

An Individualized Educational Plan (IEP) was drafted towards the end of the 2004-05 school year. (R. 153- 173) Shortly after the beginning of the 2005-06 school year, D.H. was placed in a homebound education program under the Day Treatment Program of the Lynchburg City Schools ("Day Treatment Program"). (R. 175) At the Day Treatment Program, D.H. worked closely with one teacher in a classroom setting with three to four students. Presumably, this is the new school mentioned in the ALJ's opinion, (R. 20), as there is no evidence that D.H.

9

attended any other schools besides Sandusky Middle School and the Day Treatment Program during the relevant time period.

What is less clear, is where the ALJ obtained the evidence that D.H.'s grades were actually better at the new school. The only school records from the Day Treatment Program show that D.H. received an incomplete in English, Math, Science, and Social Studies, all the classes he was taking, for the first two terms of the 2005-06 school year. (R. 177) At the administrative hearing in this matter, the following exchange took place between D.H.'s grandmother and the attorney:

> Q    It appears that he's not necessarily ready for the honor roll, but it appears that things are getting a little better.
> A    That it is.
> Q    Okay, what do you, what can you tell us about that?
> A    Well, I seen his grades and they, oh boy, they've really gotten better.
> Q    Way better?
> A    Really better.

(R. 308) This provides the only evidence of D.H.'s academic improvement. Regardless of whether D.H.'s actually improved academically, the ALJ failed to analyze whether such progress was the result of the Day Treatment Program's highly structured setting.

The Commissioner is charged with considering a child's "need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting." 20 C.F.R. § 416.924a(b)(5)(iv)(C). The regulations also acknowledge that "[e]ven if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting." Id.

Here, the ALJ simply notes that D.H.'s grades improved without discussion of the effect the structured or supportive setting of the Day Treatment Program had on D.H.'s improvement. Additionally, the ALJ does not discuss whether D.H. would continue his progress or maintain the level he achieved outside the structured environment of the Day Treatment Program. It may very well be that the ALJ did consider such information, but because it is absent from the record, meaningful review by this court is precluded.

Thus, the undersigned is constrained to recommend that this case be remanded for further administrative review. The ALJ must analyze the impact of the Day Treatment Program on D.H.'s progress and whether he would be able to maintain an equivalent level of functioning outside the structured confines of the program with regard to domains (i) and (ii).

## IV.

In the alternative, Mayberry argues that even if the ALJ's decision is supported by substantial evidence, the ALJ committed an error of law by not considering whether D.H.'s impairment would have been functionally equivalent to the listed impairments for a closed period of time. Mayberry asserts that much of the evidence relied upon by the ALJ stems from very recent developments and that for the majority of the time period at issue D.H. should have been entitled to benefits. Because the undersigned recommends remanding the matter on other grounds, the court need not decide this issue at this time. On remand, the Commissioner should consider whether D.H. would qualify for benefits for a closed period.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any

adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

Entered this 9th day of June, 2008.

Michael F. Urbanski
United States Magistrate Judge